IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-14026-CRIMINAL-CANNON


UNITED STATES OF AMERICA,

             Plaintiff,              AUGUST 26, 2022

     vs.

                                   FORT PIERCE, FLORIDA
ARTAVIS SPIVEY,

             Defendant.         Pages 1 - 32
_____/



TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE AILEEN CANNON
UNITED STATES DISTRICT JUDGE



<u>APPEARANCES</u>:

FOR THE PLAINTIFF:     MICHAEL D. PORTER, AUSA
                        Office of U.S. Attorney
                        101 South US Highway One
                        Suite 3100
                        Fort Pierce, Florida  34950



FOR THE DEFENDANT:    VALENTIN RODRIGUEZ, ESQ.
                        Valentin Rodriguez, P.A.
                        2465 Merxer Avenue
                        Suite 301
                        West Palm Beach, FL  33401




REPORTED BY:          DIANE MILLER, RMR, CRR
                        Official Court Reporter
                        diane_miller@flsd.uscourts.gov

1               P-R-O-C-E-E-D-I-N-G-S

2          THE COURT:  Good morning.

3          THE COURTROOM DEPUTY:  Calling case

4    22-CR-14026-Cannon, United States of America versus Artavis

5    Spivey.  If we can have Counsel's appearances starting with the

6    Government.

7          MR. PORTER:  Good morning, Your Honor; Michael Porter

8    on behalf of the United States.

9          THE COURT:  Good morning.

10          MR. RODRIGUEZ:  Good morning, Your Honor; Valentin

11    Rodriguez on behalf of the defendant, Mr. Spivey.

12          THE COURT:  Good morning.

13          And good morning, Mr. Spivey.  How do you pronounce

14    your full name?

15          THE DEFENDANT:  Artavis Spivey.

16          THE COURT:  Thank you.

17          You all may be seated.

18          Mr. Rodriguez, I understand it is your client's

19    intention to plead guilty today to counts one and two of the

20    indictment; is that correct?

21          MR. RODRIGUEZ:  That is correct, Your Honor.

22          THE COURT:  Okay.  And have the parties executed the

23    plea agreement and the stipulated factual basis, Mr. Porter?

24          MR. PORTER:  Yes, Your Honor.

25          MR. RODRIGUEZ:  Yes, Your Honor.

1          MR. PORTER:  I believe the Court has a copy.

2          THE COURT:  Okay, thank you.

3          All right.  Mr. Spivey, I'm going to ask you several

4    questions.  The purpose of these questions is to make sure that

5    you have carefully considered your decision to plead guilty

6    today, that you are competent to make a decision and are aware

7    of the consequences of pleading guilty, and that there is a

8    factual basis in support of the guilty plea.

9          If, at any point, you don't understand my questions

10   or if you wish to speak to your attorney, please let me know

11   right away so we can make that happen; understood, sir?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Let's have the defendant sworn in,

14   please.

15         THE COURTROOM DEPUTY:  Yes, Your Honor.

16            ARTAVIS ARRIEL SPIVEY, DEFENDANT, SWORN

17                          EXAMINATION

18   BY THE COURT:

19   Q   Mr. Spivey, I'm going to ask that you to speak up just a

20   little bit into the microphone so our court reporter can hear

21   you.

22         What is your full name, please, and spell your last

23   name for the record?

24   A   Artavis Arriel Spivey, S-P-I-V-E-Y.

25   Q   And your middle name, sir?

```
 1    A    Arriel, A-R-R-I-E-L.

 2    Q    A-R-R-I-E-L?

 3    A    Yes, ma'am.

 4    Q    Okay.  Are you or have you ever been known by any other

 5    name or alias?

 6    A    Yeah -- yes, ma'am.

 7    Q    What other name or alias?

 8    A    Tay Tay.

 9    Q    Tacy?

10    A    Tay Tay, T-A-Y T-A-Y

11    Q    T-A-Y T-A-Y?

12    A    Yes, ma'am.

13    Q    Okay.  Where were you born?

14    A    Winter Haven, Florida.

15    Q    And how old are you?

16    A    Twenty.

17    Q    How far did you go in school?

18    A    Ninth grade.

19    Q    What school was that?

20    A    I was in county jail when I made it to ninth grade.

21    Q    Okay.  Do you read or write the English language?

22    A    Yes, ma'am.

23    Q    Are you a citizen of the United States?

24    A    Yes, ma'am.

25    Q    Have you ever been treated for any mental illness?
```

```
 1   A   No, ma'am.

 2   Q   Have you ever been treated for an addiction to narcotic

 3   drugs or alcohol?

 4   A   No, ma'am.

 5   Q   Are you currently under the influence of any drugs,

 6   alcohol, or other intoxicants?

 7   A   No, ma'am.

 8   Q   Have you taken any medication at all within the last 48

 9   hours?

10   A   No, ma'am.

11   Q   Do you feel as if you fully understand what is happening

12   here today?

13   A   Yes, ma'am.

14          THE COURT:  Mr. Rodriguez, is it your opinion that

15   your client is competent to enter into a guilty plea?

16          MR. RODRIGUEZ:  It is my opinion, Your Honor, yes.

17   BY THE COURT:

18   Q   Mr. Spivey, do you believe you have any physical or mental

19   condition or illness that would prevent you from understanding

20   what is happening here today?

21   A   No, ma'am.

22   Q   Now has anybody tried to force you to plead guilty?

23   A   No, ma'am.

24   Q   Has anybody tried to coerce you or threaten you to plead

25   guilty?
```

```
 1    A    No, ma'am.

 2              THE COURT:  Mr. Rodriguez, are you aware of any

 3    promises or assurances of any kind other than what's prescribed

 4    in the plea agreement to get Mr. Spivey to plead guilty?

 5              MR. RODRIGUEZ:  I am not aware of any.

 6    BY THE COURT:

 7    Q    And, Mr. Spivey, are you pleading guilty of your own free

 8    will because you are, in fact, guilty of counts one and two?

 9    A    Yes, ma'am.

10    Q    Now have you received a copy of the indictment that is

11    pending against you, that is the written charges in the case?

12    A    Yes, ma'am.

13    Q    And have you had an opportunity to discuss the case in

14    general with your attorney?

15    A    Yes, ma'am.

16    Q    Count one in the indictment alleges as follows:  On or

17    about February 17th, 2022, in Highlands County in the Southern

18    District of Florida and elsewhere, the defendant, Artivis

19    Spivey, and Daniel Zamod, with the intent to cause death or

20    serious bodily harm, did take a motor vehicle that had been

21    transported, shipped, and received in interstate and foreign

22    commerce, that is a 2018 Lincoln MKC from the person and

23    presence of another, that is JS, by force and violence and by

24    intimidation, in violation of Title 18, United States Code,

25    Sections 2119(1) and section 2.
```

1          Count two alleges brandishing a firearm during and in

2   relation to a crime of violence; and it alleges, on or about

3   February 17th, 2022, in Highlands County in the Southern

4   District of Florida and elsewhere, the defendant, Artavis

5   Spivey, and Daniel Zamot did knowingly use and carry a firearm

6   during and in relation to a crime of violence, an offense for

7   which the defendants may be prosecuted in a court of the United

8   States.  That is a violation of Title 18, United States Code,

9   Section 2119(1), as charged in count one of the indictment; in

10  violation of Title 18, United States Code, Sections

11  924(c)(1)(A) and 2; pursuant to Title 18, United States Code,

12  Section 924(c)(1)(A)(ii), it is further alleged that the

13  firearm was brandished.

14          Do you understand both of those charges, sir?

15  A   Yes, ma'am.

16  Q   Now have you had enough time to fully discuss the charges

17  against you in this case in general with your attorney?

18  A   Yes, ma'am.

19  Q   Are you fully satisfied with your attorney and with the

20  advice and representation that he has given you in this case?

21  A   Yes, ma'am.

22  Q   Are there any questions that you have asked of your

23  attorney that he has not answered to your satisfaction?

24  A   No, ma'am.

25          THE COURT:  All right.  Mr. Porter, if you could

1   please set forth the essential elements of counts one and two.

2          MR. PORTER:  Yes, Your Honor.

3          Had this case proceeded to trial, the United States

4   would have had to prove the following elements beyond a

5   reasonable doubt:

6          With respect to count one, first, the defendant took

7   a motor vehicle from or in the presence of another; second, the

8   defendant did so by force and violence or intimidation; three,

9   the motor vehicle had previously been transported, shipped, or

10  received in interstate or foreign commerce; and four, the

11  defendant intended to cause death or serious bodily harm when

12  he took the motor vehicle;

13         With respect to count two of the indictment, first,

14  the defendant committed the crime of violence charged in count

15  one of the indictment; and second, during and in relation to

16  that crime of violence, the defendant knowingly brandished a

17  firearm as charged in the indictment.

18         A defendant is criminally responsible for the acts of

19  another person if the defendant aids and abets the other

20  person.  The defendant aids and abets another person if the

21  defendant intentionally joins with the other person to commit a

22  crime.

23         To brandish a firearm means to show all or part of

24  the firearm to another person or otherwise make another person

25  aware of the firearm in order to intimidate that person.

```
 1              THE COURT:  Thank you.
 2              Mr. Rodriguez, are you satisfied that those are the
 3    correct elements of counts one and two?
 4              MR. RODRIGUEZ:  Yes, Your Honor.
 5    BY THE COURT:
 6    Q   Mr. Spivey, are you aware that those are the elements the
 7    Government would have had to prove beyond a reasonable doubt,
 8    if counts one and two had proceeded to trial?
 9    A   Yes, ma'am.
10    Q   And do you understand, sir, when you plead guilty, you give
11    up your right to have the Government prove each of those
12    essential elements of the crimes beyond a reasonable doubt?
13    A   Yes, ma'am.
14    Q   You also give up all of your defenses; do you understand
15    that, as well?
16    A   Yes, ma'am.
17    Q   Okay.  Now, I understand you have indicated you're a United
18    States citizen born in this country, but I will nonetheless
19    advise you of the immigration consequences to your guilty plea.
20              If you were not born in this country, your guilty
21    plea very likely will affect your right to stay in this country
22    and may subject you to deportation and denial of admission to
23    the United States in the future.
24              THE COURT:  Mr. Rodriguez, if you wish for us to
25    pause the proceedings, we can; but I can see you're fiddling
```

August 26, 2022.

```
 1    with your cellphone.

 2              MR. RODRIGUEZ:  No, Your Honor.  I'm actually reading

 3    the plea agreement, it is easier to read there.

 4              Thank you.

 5              THE COURT:  Thank you for the clarification.

 6    BY THE COURT:

 7    Q   If you were not born in this country, sir, your plea will

 8    very likely affect your ability to stay in this country and may

 9    subject you to deportation and denial of entry into the United

10    States in the future.  Are you willing to plead guilty today,

11    sir, regardless of any plea consequences that your guilty plea

12    might entail, even if that means you would be automatically

13    removed from the United States?

14    A   Yes, ma'am.

15    Q   Do you understand that both offenses to which you are

16    pleading guilty today are felony offenses?

17    A   Yes, ma'am.

18    Q   And so do you understand that if your plea is accepted, you

19    would be adjudicated guilty of both offenses and that

20    adjudication might deprive you of valuable civil rights such as

21    the right to vote, the right to hold public office, the right

22    to serve on a jury, and the right to possess any kind of

23    firearm or ammunition?

24    A   Yes, ma'am.

25    Q   Now, I want to make sure you understand the possible
```

1    statutory penalties you face as a result of pleading guilty

2    today, sir, so I'm going to ask Mr. Porter to say what those

3    penalties are right now.  I'm going to ask you please pay very

4    careful attention.

5          MR. PORTER:  With respect to count one of the

6    indictment, the defendant understands and acknowledges that the

7    Court may impose a statutory maximum term of 15-years

8    imprisonment followed by a term of supervised release of up to

9    three years.  In addition to a term of imprisonment and

10   supervised release, the Court may impose a fine of up to

11   $250,000 as to count one of the indictment and may order

12   forfeiture and restitution.  There is restitution in this case,

13   and the agreement regarding restitution is set forth in

14   paragraph 11 of the plea agreement.

15         With respect to count two of the indictment, the

16   defendant understands and acknowledges that the Court must

17   impose a mandatory minimum term of seven-years imprisonment and

18   may impose up to a statutory maximum term of life imprisonment

19   to be served consecutively to the sentence imposed on count one

20   of the indictment followed by a term of supervised release of

21   up to five years.  In addition to a term of imprisonment and

22   supervised release, the Court may impose a fine of up to

23   $250,000 as to count two of the indictment and may order

24   forfeiture and restitution.

25         THE COURT:  Thank you, Mr. Porter.

```
1    BY THE COURT:

2    Q   Did you listen to what the Government just said,

3    Mr. Spivey?

4    A   Yes, ma'am.

5    Q   Okay.

6          THE COURT:  Mr. Rodriguez, do you concur with the

7    Government's recitation of the statutory penalties associated

8    with counts one and two?

9          MR. RODRIGUEZ:  Yes, Your Honor.

10   BY THE COURT:

11   Q   All right.  I'm going to read those out loud again,

12   Mr. Spivey.

13         With respect to count one of the indictment, do you

14   understand, sir, that the Court may impose a statutory maximum

15   term of 15 years imprisonment followed by a term of supervised

16   release of up to three years?

17   A   Yes, ma'am.

18   Q   And do you understand that in addition to a term of

19   imprisonment and supervised release, the Court may impose a

20   fine of up to $250,000?

21   A   Yes, ma'am.

22   Q   And then do you also understand that as to count one, the

23   Court may order forfeiture and restitution and that you are

24   agreeing, pursuant to paragraph 11 of the plea agreement, that

25   you owe restitution in the amount of $3,500 to the victim, JS,
```

1    in this case?

2    A    Yes, ma'am.

3              THE COURT:  Mr. Porter, is forfeiture outlined in the

4    plea agreement itself?

5              MR. PORTER:  Forfeiture is not outlined in the plea

6    agreement, Judge.  The United States has not made a decision

7    yet whether it will seek forfeiture.  If we do, it will be

8    limited to the firearms that were related to the offense.

9              THE COURT:  Okay.

10   BY THE COURT:

11   Q    So, Mr. Spivey, do you understand that you may be subject

12   to an order of forfeiture consistent with the allegations in

13   the indictment?

14   A    Yes, ma'am.

15   Q    Now, as to Count II of the indictment, do you understand,

16   sir, that the Court must -- and this is mandatory -- impose a

17   mandatory minimum term of seven-years imprisonment and may

18   impose up to a statutory maximum term of life imprisonment?

19   A    Yes, ma'am.

20   Q    Do you understand that that term on count two would be

21   served consecutively to the sentence imposed on count one?

22   A    Yes, ma'am.

23   Q    And in addition to a term of imprisonment on count two,

24   count two also subjects you to a possible term of supervised

25   release of up to five years?

1   A   Yes, ma'am.

2   Q   And then in addition to the term of imprisonment and

3   supervised release on count two, the Court may impose a fine of

4   up to $250,000 and may order forfeiture, as discussed

5   previously, and restitution, as discussed previously, pursuant

6   to paragraph 11.  Do you understand all of that, sir?

7   A   Yes, ma'am.

8   Q   Do you have any questions about those statutory penalties?

9   A   No, ma'am.

10  Q   Okay.  Now, on the subject of supervised release, do you

11  understand, sir, if you were placed on supervised release as

12  part of your sentence, there would be conditions associated

13  with that term of supervised release and that if you were to

14  violate any of the conditions of your supervised release, that

15  could result in additional time in prison?

16  A   Yes, ma'am.

17  Q   I can't hear you, sir.

18  A   Yes, ma'am.

19  Q   Do you understand, Mr. Spivey, all of the penalties that we

20  just discussed, they are all consequences of your guilty plea

21  here today?

22  A   Yes, ma'am.

23  Q   Let's go over the sentencing guidelines.

24          The United States Sentencing Commission has issued

25  guidelines for judges to help determine sentences in criminal

```
 1   cases, have you and your attorney been able to discuss how the
 2   sentencing guidelines might apply to your case?
 3   A    Yes, ma'am.
 4   Q    Do you understand that any estimate given to you by your
 5   attorney or by anyone else is only an estimate?
 6   A    Yes, ma'am.
 7   Q    And do you understand that the Court can depart or vary
 8   from the sentencing guidelines and impose a sentence that is
 9   higher or lower than the sentence recommended by the sentencing
10   guidelines?
11   A    Yes, ma'am.
12   Q    Do you understand that the sentencing guidelines are not
13   binding on the Court?
14   A    Yes, ma'am.
15   Q    Do you understand that the Court could sentence you above
16   the sentencing guidelines up to the maximum permitted by law or
17   below than what the sentencing guidelines recommend?
18   A    Yes, ma'am.
19   Q    And do you understand that if the Court were to impose a
20   higher sentence than you were hoping for, you would not be able
21   to withdraw your guilty plea solely as a result of the sentence
22   that you receive?
23   A    Yes, ma'am.
24   Q    Now let's go over the various rights that you give up, when
25   you plead guilty.
```

1          Do you understand that you have the right to plead
2   not guilty to any offense charged against you and to persist in
3   that plea of not guilty?
4   A    Yes, ma'am.
5   Q    I'm sorry, I can't hear you well, sir.
6   A    Yes, ma'am.
7   Q    Do you understand that you have the right to a trial by
8   jury?
9   A    Yes, ma'am.
10  Q    Do you understand that at a trial, you would be presumed
11  innocent and it would be the Government's burden to prove your
12  guilt beyond a reasonable doubt as to both counts one and two?
13  A    Yes, ma'am.
14  Q    Do you understand that you have the right to the assistance
15  of appointed counsel for your defense and, if necessary, during
16  other stages of this proceeding?
17  A    Yes, ma'am.
18  Q    Do you understand that you have the right to confront and
19  cross-examine adverse witnesses in your defense at trial?
20  A    Yes, ma'am.
21  Q    Do you understand that you have the right to compel the
22  attendance of witnesses to testify at a trial?
23  A    Yes, ma'am.
24  Q    Do you understand that you would have the right to testify
25  at trial if you wanted to testify?

1    A    Yes, ma'am.

2    Q    And finally, do you understand that you have the right to

3    remain silent and decide not to testify or to put on any

4    evidence at all, and that if you were -- if you had decided not

5    to testify or to put on any evidence at all, those facts could

6    not be used against you at a trial?

7    A    Yes, ma'am.

8    Q    All right.  Turning to the plea agreement, I have an

9    original version of the plea agreement.  It is six pages in

10   length with signatures on page six, all dated with today's

11   date.  Mr. Spivey, is that your signature on page six?

12   A    Yes, ma'am.

13            THE COURT:  Mr. Rodriguez, is that your signature?

14            MR. RODRIGUEZ:  Yes, Your Honor.

15            THE COURT:  Did Mr. Spivey sign this in your

16   presence?

17            MR. RODRIGUEZ:  Yes, he did.

18            THE COURT:  And, Mr. Porter, is that your signature?

19            MR. PORTER:  Yes, Your Honor.

20            THE COURT:  Okay.

21   BY THE COURT:

22   Q    Mr. Spivey, before you signed this, did you have an

23   opportunity to review it fully?

24   A    Yes, ma'am.

25   Q    Do you understand the full contents of the plea agreement?

1    A    Yes, ma'am.

2    Q    Do you need any additional time to discuss anything related

3    to the plea agreement with your attorney?

4    A    No, ma'am.

5    Q    Now, do you believe that this plea agreement represents the

6    full agreement you have with the Government?

7    A    Yes, ma'am.

8    Q    Have any additional promises been made to you that are not

9    contained in this plea agreement?

10   A    No, ma'am.

11   Q    Okay.  Now, do you understand that the terms of this plea

12   agreement, they are merely recommendations to the Court?   In

13   other words, the Court can reject the recommendations without

14   allowing you to withdraw your guilty plea; do you understand

15   that, sir?

16   A    Yes, ma'am.

17   Q    And the Court also, as I noted earlier, can impose a

18   sentence that is more severe than you might anticipate.

19   A    Yes, ma'am.

20   Q    If that were to happen, you would not be able to withdraw

21   your guilty plea solely as a result of the sentence that you

22   receive; do you understand, sir?

23   A    Yes, ma'am.

24   Q    All right.  Now, in exchange for your guilty plea for

25   counts one and two, the Government agrees to dismiss the

1    remaining count against you, which is count three; do you

2    understand that?

3    A    Yes, ma'am.

4    Q    And that would happen after sentencing.

5             I also want to go over another provision in this plea

6    agreement, and it concerns your appellate rights, sir.  I'm

7    referring specifically to paragraph 13.  I'm going to ask you

8    some questions about that.  There is also a related provision

9    in paragraph 14 so let's go over that.

10            Did you -- did you read and discuss that appellate

11   waiver provision with your attorney?

12   A    Yes, ma'am.

13   Q    Do you need any additional time to discuss that specific

14   provision with your attorney?

15   A    No, ma'am.

16   Q    So do you understand that federal law gives you the right

17   to appeal the sentence that I impose or the manner in which I

18   impose it, but by entering into this plea agreement, you would

19   be waiving or giving up your right to appeal the sentence that

20   I impose except for in very narrow situations?  Do you

21   understand, sir?

22   A    Yes, ma'am.

23   Q    So if the Government were to appeal the sentence, then you

24   would be absolved of your appellate waiver and you too would be

25   permitted to appeal; do you understand, sir?

1    A    Yes, ma'am.

2    Q    If the Court were to sentence you above the statutory

3    maximum permitted by law, then you also would be permitted to

4    appeal that sentence; do you understand, sir?

5    A    Yes, ma'am.

6    Q    And finally, if the Court were to vary or depart upward

7    from the advisory guideline range established by the Court at

8    sentencing, you would be permitted to appeal; do you

9    understand, sir?

10   A    Yes, ma'am.

11   Q    But apart from those very narrow exceptions, do you

12   understand that you are giving up your right to appeal by

13   entering into this plea agreement?

14   A    Yes, ma'am.

15   Q    You, also, sir, stated in paragraph 14, you are giving up

16   your right to assert any claim that the statutes to which you

17   are pleading guilty are unconstitutional, and you are also

18   waiving any claim that the admitted conduct does not fall

19   within the scope of those statutes of conviction; do you

20   understand, sir?

21   A    Yes, ma'am.

22   Q    Has anybody threatened you in order to induce you to waive

23   your right to appeal?

24   A    No, ma'am.

25   Q    Has anybody coerced you in any way for that purpose?

```
 1   A    No, ma'am.

 2   Q    So other than the promises made to you by the Government in

 3   this plea agreement, has anybody else made any other promises,

 4   assurances, or guaranties to you to get you to waive your right

 5   to appeal?

 6   A    No, ma'am.

 7   Q    Do you feel as if you fully understand the appeal waiver

 8   and its significance?

 9   A    Yes, ma'am.

10   Q    And did you sign that provision knowingly and voluntarily?

11   A    Yes, ma'am.

12        THE COURT:  All right.  I'm going to make a specific

13   finding on the record having specifically questioned the

14   defendant that he fully understands the appellate waiver

15   provisions, which he signed and which he knowingly and

16   voluntarily entered into, and that he has knowingly and

17   voluntarily waived his right to appeal as described in the plea

18   agreement.

19        Anything further on the appellate waiver issue,

20   Mr. Rodriguez?

21        MR. RODRIGUEZ:  No, Your Honor.

22        THE COURT:  Mr. Porter?

23        MR. PORTER:  No, Your Honor.

24        THE COURT:  Okay.

25        Mr. Porter, let's turn then to the factual basis.
```

```
 1  Before you do so, let me just inquire about the executed
 2  version.
 3  BY THE COURT:
 4  Q   Mr. Spivey, I have in front of me a five-page document.
 5  The title of it is "Stipulation of Facts and Acknowledgment of
 6  Offense Elements In Support of Guilty Plea."  Did you sign that
 7  document, sir?
 8  A   Yes, ma'am.
 9  Q   And is that your signature on page five with the date of
10  today's date?
11  A   Yes, ma'am.
12  Q   Okay.
13          THE COURT:  Mr. Rodriguez, did the defendant sign
14  this in your presence?
15          MR. RODRIGUEZ:  Yes, he did.
16          THE COURT:  Okay.
17          And Mr. Porter?
18          MR. PORTER:  Yes, Your Honor.  I signed it.
19          THE COURT:  All right.  Thank you.
20  BY THE COURT:
21  Q   Before you signed this, Mr. Spivey, did you have a full
22  opportunity to review it?
23  A   Yes, ma'am.
24  Q   Do you fully understand the contents of this document?
25  A   Yes, ma'am.
```

1  Q   All right.

2           THE COURT:  Mr. Porter, I would ask that you please

3  read it into the record slowly.

4           MR. PORTER:  Yes, Your Honor.

5           These facts are not all of the facts known to the

6  United States in this case and are offered merely to provide a

7  sufficient factual basis to support the defendant's guilty

8  plea.

9           On February 17th, 2022, at approximately 12:37 P.M.,

10 the Highlands County Sheriff's Office received a 911 call

11 advising that an armed carjacking had just taken place at

12 Highlands Advanced Rheumatology and Arthritis Center in Avon

13 Park, Florida.  Shortly thereafter, Deputy Dwayne Kelly

14 interviewed the victim of the carjacking, JS.  JS advised

15 Deputy Kelly that she was sitting inside her 2018 Lincoln MKC,

16 located in the parking lot of Highlands Rheumatology, when a

17 man armed with a black 9mm semi-automatic handgun approached

18 her and demand the keys to her vehicle.

19          JS was sitting in the driver's seat of the vehicle

20 with the door open.  JS advised that she complied and gave the

21 man her keys after which he demanded her cellphone which she

22 also gave him.  JS explained that the man then ordered her to

23 exit and walk around to the back of the vehicle or he would

24 shoot her.  JS described the man as a black male with a slender

25 build and stated that he was wearing sweatpants, a red or

1    orange hooded jacket, and a face mask with holes for his eyes

2    and mouth.

3        JS stated that a second man whom she described as a

4    heavier set black male was standing at the rear of her vehicle

5    when she was robbed.  JS stated the second man was also wearing

6    sweatpants, a red or orange hooded jacket, and a face mask with

7    holes for his eyes and mouth.

8        JS advised that the two men fled the scene in her

9    vehicle.  Law enforcement was able to track JS's 2018 Lincoln

10   MKC through the use of Ford Pass, a smart phone application

11   that allows its users to access the GPS coordinates for their

12   vehicles.  At approximately 2:41 P.M. the Ford Pass application

13   indicated JS's 2018 Lincoln MKC was traveling south on State

14   Road 31 north, in Lee County, Florida.

15       Shortly thereafter, the Highlands Sheriff's Office

16   notified the Lee county Sheriff's Office that the 2018 Lincoln

17   MKC was in Lee County.  At approximately 3:00 P.M., officers

18   from the Lee County Sheriff's Office located the 2018 Lincoln

19   MKC and attempted to conduct a traffic stop in Fort Myers,

20   Florida.  A brief pursuit ensued during which the vehicle drove

21   through several yards and almost crashed into another vehicle.

22   The vehicle ultimately crashed into a patch of bushes after law

23   enforcement conducted a pit maneuver.  Shortly thereafter,

24   Mr. Spivey exited the vehicle from the front driver's side, and

25   Daniel Zamot exited the vehicle from the front passenger side.

1    Both Mr. Spivey and Mr. Zamot fled on foot and were apprehended

2    a short time later.  Mr. Spivey was wearing a red hooded jacket

3    when he was arrested.

4            Deputy Dwayne Kelly interviewed Mr. Zamot at the Lee

5    County Sheriff's Office the same day he was arrested.

6    Mr. Zamot was advised of his Miranda rights and agreed to speak

7    with Deputy Kelly.  Mr. Zamot admitted, among other things,

8    that he was present with Mr. Spivey when Mr. Spivey stole JS's

9    2018 Lincoln MKC.  Mr. Zamot acknowledged that he knew

10   Mr. Spivey had a firearm on his person when he and Mr. Spivey

11   approached the 2018 Lincoln MKC.  Mr. Zamot also said

12   Mr. Spivey told him he was going to go get that car before they

13   approached the 2018 Lincoln MKC.

14           While searching the 2018 Lincoln MKC, Lee County

15   Sheriff's Office Detective Tomatoslucu [phonetic] recovered,

16   among other things, two ski masks from behind the front

17   passenger seat and a loaded black H&K 9mm semi-automatic

18   firearm with an extended magazine between the driver's seat and

19   center console.  The H&K 9mm semi-automatic firearm magazine

20   was reported stolen out of Polk County.  The H&K 9mm

21   semi-automatic firearm qualifies as a firearm under federal

22   law.

23           A loaded Cobra .380 caliber semi-automatic firearm

24   was found in the bushes where Mr. Zamot exited the vehicle.

25   The Cobra .380 caliber semi-automatic firearm was reported

1    stolen out of Osceola County.  The Cobra firearm qualifies as a

2    firearm under federal law.

3         The Highlands County Sheriff's Office was able to

4    obtain an emergency ping order for JS's cellphone which

5    Mr. Spivey stole during the carjacking.  Highlands County

6    Sheriff's Office Deputy Wells located JS's cellphone on the

7    side of U.S. 21 in Avon Park.  JS's cellphone was processed for

8    latent prints by Highlands County Sheriff's Office Detective

9    Kathleen Perez, who is a crime scene analyst and fingerprint

10   expert.  Detective Perez later identified a latent print that

11   was lifted from JS's cellphone as Spivey's left little finger.

12        The Highlands County Sheriff obtained ring door

13   camera footage from several nearby residences.  One of the

14   cameras depict Mr. Spivey and Mr. Zamot walking up to JS's

15   vehicle together.  Specifically, the video depicts two males

16   with red hooded jackets approaching JS's vehicle and walking up

17   to the driver's side door of the vehicle with one of the males

18   standing directly behind the other.  The video also depicts JS

19   running from the vehicle shortly after Mr. Spivey and Mr. Zamot

20   approached her.

21        The 2018 Lincoln MKC was manufactured in Louisville,

22   Kentucky, and therefore had been transported, shipped, and

23   received in interstate commerce.  Mr. Spivey stipulates that he

24   and Mr. Zamot stole JS's 2018 Lincoln MKC on February 17th,

25   2022, and that they did so by force, violence, and

1    intimidation.  Mr. Spivey also stipulates that he brandished an

2    H&K 9mm semi-automatic firearm, when he and Mr. Zamot stole

3    JS's 2018 Lincoln MKC.

4              THE COURT:  Thank you.

5    BY THE COURT:

6    Q   Mr. Spivey, did you hear what the Government just read into

7    the record?

8    A   Yes, ma'am.

9    Q   Do you agree that it is an accurate statement of your

10   conduct in this case?

11   A   Yes, ma'am.

12   Q   Do you also agree that the Government could have proven

13   those facts beyond a reasonable doubt had this matter proceeded

14   to trial?

15   A   Yes, ma'am.

16   Q   Now, did you talk to your attorney about the Government's

17   evidence against you?

18   A   Yes, ma'am.

19             THE COURT:  Mr. Rodriguez, are you satisfied that

20   your client understands the charges against him and the

21   consequences of his guilty plea to counts one and two?

22             MR. RODRIGUEZ:  I am, Your Honor.

23             THE COURT:  Mr. Rodriguez, are you satisfied that

24   there has been a sufficient statement of factual basis with

25   regard to counts one and two of the indictment?

```
 1              MR. RODRIGUEZ:  Yes, Your Honor.

 2              THE COURT:  Finally, Mr. Rodriguez, do you stipulate,

 3      had the case gone to trial, the Court would have sent

 4      Mr. Spivey's case to the jury?

 5              MR. RODRIGUEZ:  Yes, Your Honor, based on the

 6      evidence we have reviewed in this case, you would have sent

 7      this case to the jury.

 8              THE COURT:  Okay.

 9              Are there any other matters to discuss with respect

10      to the plea agreement, Mr. Porter?

11              MR. PORTER:  Judge, just briefly, there are two

12      nonbinding recommendations that I would like to go over.  One

13      of them is contained in paragraph nine.  I would just like to

14      read it into the record.

15              The United States and the defendant agree that

16      although not binding on the Probation Office or the Court, they

17      would jointly recommend that the Court impose a sentence within

18      the defendant's advisory sentencing guideline range as

19      calculated by the Court.

20              And also, at paragraph ten, the United States and the

21      defendant agree that although not binding on the Probation

22      Office or the Court, they will jointly recommend that the Court

23      run any sentence imposed in this case concurrent to any

24      sentence imposed in State of Florida v. Artavis Arriel

25      Spivey -- there is a case number listed in there -- Mr. Spivey
```

```
 1   has a parallel state case that is pending in Highlands County

 2   right now.

 3            THE COURT:  Okay, thank you.

 4   BY THE COURT:

 5   Q   Do you understand those two provisions in the plea

 6   agreement, Mr. Spivey?

 7   A   Yes, ma'am.

 8   Q   But do you understand that those are merely recommendations

 9   and the Court is not required to accept them?  Do you

10   understand, sir?

11   A   Yes, ma'am.

12            THE COURT:  Mr. Rodriguez, anything further with

13   respect to the plea agreement?

14            MR. RODRIGUEZ:  Nothing that I can think of, Your

15   Honor.

16            THE COURT:  Do you want any additional time to go

17   over it with your client?

18            MR. RODRIGUEZ:  No, Your Honor.  I believe we have

19   spent sufficient time reviewing the plea.

20            THE COURT:  Okay.

21            Mr. Spivey, do you have any additional questions

22   about the plea agreement?

23            THE DEFENDANT:  No, ma'am.

24            THE COURT:  I'm going to find that the facts the

25   Government has set forth on the record are sufficient to
```

```
 1    establish the crimes alleged in counts one and two of the

 2    indictment.

 3              Mr. Spivey, are you fully satisfied with the

 4    representation you have received from your attorney?

 5              THE DEFENDANT:  Yes, ma'am.

 6              THE COURT:  How do you plead to count one, guilty or

 7    not guilty?

 8              THE DEFENDANT:  Guilty.

 9              THE COURT:  And how do you plead to count two, guilty

10    or not guilty?

11              THE DEFENDANT:  Guilty.

12              THE COURT:  In the case of United States of America

13    versus Artavis Spivey, case number 22-14026-Criminal, it is the

14    finding of the Court that the defendant is alert and

15    intelligent, that he is fully competent and capable of entering

16    an informed plea in this case, that he is aware of the nature

17    of the charges and the consequences of the plea, that the plea

18    of guilty is a knowing and voluntary plea supported by an

19    independent basis in fact containing each of the essential

20    elements of both counts one and two, and that the plea

21    agreement presented to the Court was voluntarily entered into,

22    and both the plea and the agreement are not the result of force

23    or threats.

24              I also find that the defendant has entered the plea

25    with the advice and assistance of competent counsel with whom
```

```
 1    he indicates he is fully satisfied, and so the plea of guilty
 2    to counts one and two is accepted.  Mr. Spivey is now
 3    adjudicated guilty of counts one and two of the indictment.
 4            Mr. Spivey, the Probation Office will now begin their
 5    investigation in the hopes of preparing what we call a
 6    "presentence investigation report."  That process will involve
 7    an interview that is conducted by Probation.  You will be asked
 8    various questions and you can have the assistance of your
 9    lawyer there.  Probation then will prepare that report, and you
10    and the Government will have an opportunity to file any timely
11    objections to that report.
12            Do you have any questions, sir?
13            THE DEFENDANT:  No, ma'am.
14            THE COURT:  When can we have sentencing, Ms. Nicato?
15            THE COURTROOM DEPUTY:  Yes, Your Honor; sentencing
16    will be Monday, November 10th, 2022, at 10:30 A.M.
17            THE COURT:  Mr. Spivey, as noted, sentencing in this
18    matter will take place on November 10th, at 10:30 A.M.  If
19    there is anybody you want to be present at sentencing, please
20    let them know of the date and time so they can be here.
21            Anything further from the defendant?
22            MR. RODRIGUEZ:  No, Your Honor.
23            THE COURT:  From the Government?
24            MR. PORTER:  No, Your Honor.
25            THE COURT:  All right.  I think that concludes our
```

```
 1   hearing this morning.

 2            Mr. Spivey, I will see you in November; take care.

 3            The Court is in recess.

 4            MR. RODRIGUEZ:  Thank you, Your Honor.

 5            MR. PORTER:  Thank you, Your Honor.

 6       (PROCEEDINGS ADJOURNED AT 11:13 A.M.)

 7                    C-E-R-T-I-F-I-C-A-T-E

 8            I hereby certify that the foregoing is

 9        an accurate transcription and proceedings in the

10        above-entitled matter.

11
     9/14/2022                    /s/DIANE MILLER
12   DATE                    DIANE MILLER, RMR, CRR, CRC
                             Official Court Reporter
13                           United States District Court
                             101 South U.S. Highway 1
14                           Fort Pierce, FL  34950
                             772-467-2337
15

16

17

18

19

20

21

22

23

24

25
```

August 26, 2022.